BRANDON *et als. v.* MASON *et als.*

1. CHANCERY PRACTICE. *Bills. Construction.* When the language of a bill is susceptible of a limited or enlarged construction as to its objects and extent of relief sought, but the subsequent proceedings show that the complainant, the court, and the defendant construed the words in the enlarged sense, that meaning will be considered as the one intended.

2. EXECUTOR. *Is a commissioner. When.* If the executor of the will which authorizes him to sell land, come into court for the purpose of having the will construed, and, in pursuance of an order made to

secure the forthcoming, accounting for, and proper distribution of the proceeds of sale, enters into bond with security for the faithful performance of the orders and decrees of the court in and about the land, moneys and means, and to pay out the proceeds to the parties entitled, he thereby becomes a commissioner of the court, and no payment will be good which is not authorized in advance or sanctioned by a subsequent order.

3. SAME. *Special commissioner. How sureties are made liable.* If the executor, who thus comes into court and sells the land as special commissioner, dies before final decree, the defendants or their representatives may file a bill of supplement and revivor, in the nature of a cross-bill, to have the benefit of the proceedings, and to hold the executor, as their special commissioner, and his sureties liable for the proceeds of the land sold.

4. SAME. *Same. Payment by commissioner to himself as administrator without sufficient bond will not be presumed.* Equity will never consider that as done which ought not to have been done, as, for example, that a special commis-ioner to sell land had paid the proceeds of sale to himself as administrator, when his bond in the latter capacity was insufficient to cover the fund.

5. SAME. *Distributees. Administrator de bonis non not a necessary party. When.* After an administrator of an estate has acted as such for seven years, and, upon bill filed by the distributees against his personal representative, a balance has been found coming to them over all allowances for debts and expenses, the presence of an administrator *de bonis non* will be dispensed with, even where the bill seeks to reach other assets not reduced to possession by the original administrator, no objection having been raised by the pleadings to the recovery by the distributees.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield. C. G. SMITH, Ch.

GARNER & GARNER for complainants.

J. W. JUDD for defendants.

COOPER, J., delivered the opinion of the court.

In September, 1863, George Murphy died leaving

a will, which was proved in the succeeding month, and R. H. Alley, named therein as executor, qualified accordingly, but without giving security, the will dispensing with the requirement. The testator devised "one-seventh part of the proceeds of sale of my real estate" to his wife and each of his six children, the devise, when to a daughter, being to her for life and after her death to her children, and when to a son (except in the case of his son Irad Murphy), in trust for the son's children. The share of Irad he bequeaths to R. H. Alley in trust for Irad, so as not in any event to be liable to the debts, contracts, or liabilities of the son on contracts made before the testator's death. Alley, it seems, qualified as trustee of Irad Murphy under this bequest or devise. By the clause of the will appointing the executor, he was given "full power to sell and convey all the property not specially devised." The executor was also directed by the will, before he sold the farm, to enclose three square roods of ground including the graves of the testator's father and mother, as a graveyard for them forever, not to pass to the heirs or be sold by him.

The will disposed of the testator's slaves, and the proceeds of the sale of his perishable property, and made money legacies to the amount of $1,050, but was silent as to any excess of moneys on hand, or received from notes and accounts, after paying these legacies and the expenses of administration. It contained no residuary clause.

In January, 1864, Irad Murphy died, and R. H.

Alley was, on the first of the following month, ap-
pointed and qualified as administrator of his estate, by
giving a bond, with two sureties, in the penalty of
$500 for the faithful performance of his duties.

On the 29th of September, 1865, R. H. Alley, as
executor of George Murphy's will, filed his bill against
the devisees and distributees of the deceased, stating
the foregoing facts.    He stated, also, that he had
sold the personal property, and for a minute history
and account of his acts he refers to his settlement
with the County Court.    He says that the testator
had at death a considerable amount in cash, notes and
accounts, which will foot up some $3,000, being in
excess of the money legacies, and the bill suggests that
as to the surplus of these funds decedent died intes-
tate.    He adds that he had received, in payment of
notes, the circulating notes of certain of our State
banks, a part of which he still had on hand.    He
calls attention to the death of Irad Murphy, for
whom he says he had qualified as trustee under the
father's will, and upon whose estate he had become
administrator, and asks the court to direct him what
to do, and how to dispose of said estate.    He asks
the court particularly to construe the testator's will,
and fix the rights of the parties thereunder.    He
suggests that he is unable to distribute the surplus
proceeds of the notes and accounts without the aid of
the court, and calls upon the defendants for a discov-
ery of advancements made to them by the deceased
before his death.    The bill concludes thus:  " Com-
plainant asks the court to denude him of the trust,

and if he has failed to state any material facts, he asks that he may amend; and grant the complainant all the necessary relief, and, as in duty bound, he will ever pray," etc.

On the 9th day of May, 1866, an order or decree was entered in this cause, embodying several particulars. It gave the complainant leave to file such amendments to his bill as he might desire, and allowed the defendants ample time to answer fully the original bill and said amendment, stating advancements received. It then, reciting that the master is a party to the cause, orders, "by consent of all parties and their solicitors," that S. H. Benton be, and is hereby, appointed commissioner to take and state an account of complainant's administration of the estate of his testator, George Murphy, deceased, in the usual form. It then proceeds thus: "And on motion of the solicitors for the married women and minor defendants, and the court not being certain that, under the will of complainant's testator, complainant has power to sell the real estate of the testator, and, in order to relieve the validity of the sale thereof from all doubts, and to secure the forthcoming, accounting for, and proper distribution of the proceeds of said sale, there being no security required or given by said executor, the court doth direct, adjudge and decree that the complainant, after first entering into a bond and sufficient security in double the value of said real estate, before the master, shall proceed to sell said real estate publicly, etc., and report to the next term." Provision is made for another person selling the land as

special commissioner, if the complainant fail to give the bond required.

On the 2d day of July, 1866, the complainant executed his bond under the foregoing order, with five sureties, in the penalty of twenty thousand dollars. The condition of the bond, after reciting that Alley was "ordered by the court," in the above cause and at the time mentioned, to "sell the real estate or tract of land belonging to the estate of Geo. Murphy, deceased," describing it, provided that if the said Alley should "well and faithfully do and perform all the orders and decrees of the said Chancery Court in and about the said land, and in conformity with the law, and well and faithfully sell, collect, receive, and pay out to the parties entitled, all moneys arising from the sale of said land, * * and do and perform all other lawful acts, and all orders and decrees in said cause of said Chancery Court in and about said land, moneys and means, then this obligation to be void, otherwise to be and remain in full force and effect."

Process seems to have been issued and served or acknowledged, and publication to have been made for non-resident defendants, promptly upon the filing of Alley's bill, and, after the order of the 9th of May, 1866, several of the defendants filed answers. The answers of the infant defendants were filed on the 30th of April, 1867. The decree for the sale of the land was revived and renewed at the November term, 1866, and again at the May term, 1867. On the 15th of October, 1867, Alley sold the land under that

decree, and made his report—which he signed "R. H. Alley, Ex'r and Com'r"—to the following November term. On the 16th of November, 1867, the report was confirmed, and title to the land vested in the purchasers, subject to a lien for the purchase money. The commissioner to take the account of the 'complainant's administration, seems also to have made his report, for the decree gives the parties until the next term to file exceptions thereto.

Whether anything further was ever done in this case does not appear, the court having directed the clerk to insert in this record only such papers in that cause as either party to this suit might designate, and neither party has thought it necessary to have a complete transcript of the proceedings.

Alley died in May, 1871.

On the 26th of September, 1872, the bill now before us was filed by the children and grandchildren of George Murphy, entitled under his will, and who are also the distributees of Irad Murphy, deceased, and also by the administrator of the testator's widow, against the administrator of R. H. Alley and the sureties of Alley on his bond as special commissioner for the sale of the land, and against the sureties on his bond as administrator of Irad Murphy. The object of the bill, upon a statement of the foregoing facts, and that Alley had made some payments to the complainants of the proceeds of the sale of the land, was to have an account of these payments, and to hold the sureties on his bond as special commissioner liable for the residue of the proceeds of the sale, including

the share devised to him in trust for Irad Murphy, and to hold the sureties on his bond as administrator of Irad liable for other assets than those derived under the will of George Murphy

The defendants answered, admitting the facts to be substantially as stated in the bill and hereinbefore set out. The sureties of Alley on his bond as special commissioner, in their answer, say: "We admit that said Alley filed his bill in your Honor's court for a construction of said will of George Murphy and settlement of said estate. We admit that said will provides for a sale of the real estate of said deceased, and a division of the proceeds into seven shares, as stated in the bill. We further admit that a sale of said real estate was decreed in said cause at the May term, 1866, which decree was renewed and revived at the May term, 1867. We also admit that the bond mentioned was executed by said Alley, and signed by respondents as sureties about the time mentioned, and that on or about the 15th of October, 1867, said Alley sold said real estate, and reported said sale to your Honor's court in said cause, and we suppose the same was confirmed." They add that they ought not to be held liable on the bond, because Alley was authorized to sell as executor by the will, and that in no event ought they to be charged with the one-seventh of the proceeds of the sale willed to Irad Murphy.

The sureties on Alley's administration bond also admit the facts to be as charged, but insist they are not bound for the one-seventh share devised as aforesaid,

because the proceeds of sale came to Alley's hands as
special commissioner, and could not be paid to him-
self as administrator without an order of court to that
effect.

On the 1st of April, 1873, the court ordered the
defendants to file their answers by the June rules,
"after which time the matters embraced in the bill
and exhibits and answers of the defendants are re-
ferred to the clerk and master, and he will take an
account and report to the next term." On the
16th of September, 1873, after answers filed by the
administrator of Alley and the sureties on the bond
as commissioner, this order was revived. The master
made his report, which was excepted to by the com-
plainants and by the sureties on Alley's bond as ad-
ministrator. These exceptions were not addressed to
the amount with which the personal representative of
Alley was charged for the purchase money of the
land received by his intestate, but only to the mas-
ter's suggestion that the share in that fund devised
to Alley in trust for Irad Murphy should be charged
to Alley as administrator of Irad, and not as special
commissioner. The sureties on Alley's bond as spe-
cial commissioner filed no exceptions to the report.

On the 27th. of March, 1874, the cause was heard
by the Chancellor upon the whole record, "the report
and exceptions," and he, being of opinion that the
sureties on Alley's bond as special commissioner were
liable for the balance of the purchase money with
which Alley's administrator was charged by the report,
sustained the exceptions, confirmed the report as mod-

ified, and gave a decree against the administrator and
these sureties for the entire amount. The sureties on
the commissioner's bond appealed.

No objection was taken in the pleadings in the
court below, nor in the arguments made on behalf of
the appellants in this court, to the mode of proceed-
ing adopted in this case to hold Alley's estate, and
the sureties on Alley's bond as special commissioner,
liable for the proceeds of the land sold in the pre-
vious suit. And, perhaps, no objection could have
been successfully urged; for, although the bill is in
form an original bill, yet it is in substance, being
in the same court, an original bill and bill of re-
vivor and supplement in the nature of a cross-bill to
have the benefit of the proceedings in the former suit,
which suit, so far as appears, has abated by the death
of the complainant. *Devaynes* v. *Morris,* 1 M. & C.,
213. Treated in this light, the supplemental matter
arising out of the steps taken in that cause, and new
parties brought before the court, were properly intro-
duced with a view to a complete adjustment of all
the subjects of litigation. The defendants have, with
great propriety, looked to substance rather than form,
and, by a frank answer as to the facts, narrowed the
controversy to a few points of law.

The first step taken in the original suit, as well
as in this suit, was to enter a decree for an account
before any answers were filed. Perhaps this is the
course of that court in all cases, and while we can-
not commend its wisdom we are not inclined to in-
terfere with it, so long as the court and the parties

Brandon *v.* Mason.

acquiesce, and we can see that the rights of the litigants under disability have not been injuriously affected, and that the merits have been properly presented. In both cases the preliminary order or decree was renewed after all the parties were properly in court, and before it was acted on. This was sufficient to validate them even as to persons under disability, as so held recently at Knoxville in the case of *Livingston* v. *Noe,* 1 Lea.

The first argument submitted for the reversal of the Chancellor's decree in this case, is that the original bill of Alley presented no question touching the land, the proceeds of which were devised by the testator's will, and the complainant having in no way asked the assistance of the court in executing the will in that regard, the orders made in reference thereto, and, of course, everything done under them, were *coram non judice* and void; and it must be admitted that, if the court had jurisdiction, it was on a very narrow basis of written pleadings. The main object of the bill, looking to the language used, would seem to have been the construction of the will, so as to ascertain whether the testator died intestate as to the surplus of funds over money legacies and the expenses of administration, and, if so, to an account of advancements, with a view to the distribution of such surplus, to obtain credit for certain bank currency collected, and to obtain directions as to the disposition of Irad Murphy's share of the land. But the bill also asks the court "particularly to construe the will and fix the rights of the parties thereunder." And

the complainant asks the court to denude him of the trust. The language used is vague and equivocal, and might be limited, if the subsequent proceedings showed such to have been the meaning of the complainant and his eminent counsel, to the construction of the will in relation to the points mentioned, and the trust as to Irad Murphy's share. At the same time, the words "construe the will and fix the rights of the parties thereunder" are general, and may be applied to the whole will; and the prayer that the court denude him of the trust, may equally cover the trust thrown upon him by the will as an entirety. In this state of the pleading, the complainant, the court, and all the parties have construed the words in their more general sense. To construe the will, necessarily required the court to pass upon the executor's power to sell the land; and to fix the rights of the parties thereunder, involved the point whether the devisees could require security for the sale, or whether the court could demand such security as a prerequisite to a sale under its authority, to which the complainant, by filing his bill, had submitted. Whether the Chancellor came to the correct conclusion is immaterial. He made the order recited, which included a reference for an account. This reference was not only justified by the prayer of the complainant to denude him of the trust, but by his consent recited on the face of the decree. He acquiesced in the construction the court put upon the language of his bill, gave the bond required to enable him to sell the land, and sold it expressly under the decree.

It is clear that he and his sureties became bound by the bond. It is equally clear that he thereby became a special commissioner of the court for the sale of the land, even if he also exercised the power under the will, and he made the sale, and his report thereof, accordingly, expressly signing the latter as executor and special commissioner.

The fact that he qualified as required by the order of the Chancellor, and sold the land upon the terms prescribed, and reported the sale for the confirmation of the court, made the complainant the special commissioner of the court, and placed the funds in *custodia legis*, and nothing contained in the bond could affect these results. The bond itself, however, provides that he shall do and perform "all orders and decrees in said cause of said Chancery Court in and about said land, moneys and means." The fact that it also contains a condition that he shall "pay out to the parties entitled" all moneys arising from the sale, makes no difference, for the latter stipulation is not in conflict with the other, and, when the two clauses are taken together, means only that he shall make such payments under the orders and decrees of the court. In this view, any payment made to such parties would be invalid unless authorized in advance or sanctioned by a subsequent order ascertaining the shares of the parties and directing their payment. Any payment actually made in advance would be validated by a subsequent decree fixing the share equal to or in excess of the advance. But without actual payment, he and his sureties would of course continue liable.

For another reason, even if Alley had undertaken to make a payment, as commissioner, to himself as administrator, the payment would not have been sustained. His bond as administrator was only in the penalty of $500—manifestly looking only to the personal assets of his intestate other than the proceeds of this land, not then sold. The court of chancery would never have permitted the payment of Irad Murphy's share of the land to him as administrator, whether the share be treated as personalty or not, until he had executed a sufficient bond as such administrator to cover it. And equity will never consider that as done which ought not to have been done, and was not done.

The bond of the special commissioner was made payable to the State of Tennessee, but for the benefit of the parties entitled under the orders and decrees of the court. The real beneficiaries may sue in equity on the bond by a supplemental bill, as before suggested. In strict law, the distributees of a legatee can only recover personal assets through an administrator. *Thurman* v. *Shelton*, 10 Yer., 383; *Puckett* v. *James*, 2 Hum., 565; *Alexander* v. *Espy*, 6 Hum., 157; *Brown* v. *Bibb*, 2 Col., 439. The reason of the rule is, that creditors have a prior right to satisfaction out of these assets, and the personal representative is a trustee for them as well as for the distributees. After the personal representative has actually reduced the assets into his possession, the creditor's remedy against him individually, other questions out of the way, is clear. It is the duty of the personal representative

to pay the debts, and claim the credit in his settlement with the distributees. The latter alone may, therefore, sue on the administration bond, or call directly upon the administrator or his personal representative for an account. *Thomas* v. *Stanley,* 4 Sneed, 411. If the administrator *de bonis non* is clothed with a like right of action, or is a necessary party to such a suit, it is probably only where there are outstanding debts of the estate to be paid. *Bolton* v. *Powel,* 2 D. M. & G., 1; *Shackleford* v. *Runyan,* 7 Hum., 141; *Phelps* v. *Sproule,* 4 Sim., 318; 1 M. & K., 231.

In this case Alley became administrator of Irad Murphy in February, 1864, and died in 1871. It is morally certain that all creditors of that estate had either been paid by him or had fixed their claims upon him, and that his personal representative has relied upon and received credit for all such claims in the settlement made in this case. That settlement left a balance in his hands due to the distributees out of the personal effects of Irad Murphy's estate other than his share of the proceeds of the land in controversy. These proceeds belong, therefore, clearly to the distributees. It would be a technical and useless form, under these circumstances, upon an objection not made by the defendants in their answers, to require the presence of an administrator *de bonis non.*

The decree of the Chancellor is affirmed with costs.